743 So.2d 736 (1999)
Felix HOSKIN, Jr.
v.
PLAQUEMINES PARISH GOVERNMENT.
No. 98-CA-1825.
Court of Appeal of Louisiana, Fourth Circuit.
August 4, 1999.
*737 Brian J. Waid, Denise L. Martin, Bubrig Law Office, Buras, Louisiana, Counsel for Plaintiff/Appellee.
G. Patrick Hand, III, The Hand Law Firm, A P.L.C., Gretna, Louisiana, Counsel for Intervenor/Appellant.
Court composed of Chief Judge ROBERT J. KLEES, Judge MOON LANDRIEU, and Judge PATRICIA RIVET MURRAY.
LANDRIEU, Judge.
REVERSED AND REMANDED
In this case, the district court sustained the exception of lack of procedural capacity asserted by the plaintiff, Felix Hoskin, Jr., against the intervenor, Health Cost Controls (HCC), an Illinois corporation. The district court also sustained Hoskin's exceptions of no right of action and no cause of action against HCC. For the reasons set forth below, we reverse the rulings of the district court.
Mr. Hoskin, the defendant-in-intervention, was injured in an accident. His medical expenses were paid in part through his health insurance policy issued by Prudential Small Business Operations. Prudential paid $67,327.62. Subsequently, Mr. Hoskin filed suit against the Plaquemines Parish Government and obtained a judgment of $301,465.17.
Thereafter, HCC, asserting an interest on behalf of its client, Prudential, perfected a lien on the proceeds. When the Parish offered Mr. Hoskin a check for the judgment minus the amount sought by HCC, Mr. Hoskin declined to accept the check. The Parish then began a concursus proceeding to determine proper disbursement of the proceeds. Asserting that it had been appointed and authorized by Prudential to administer and prosecute all of Prudential's rights and claims to reimbursement and subrogation, HCC filed a petition of intervention in its own name seeking reimbursement of the medical expenses paid by Prudential.
Mr. Hoskin filed exceptions of lack of procedural capacity, no right of action, and no cause of action. Mr. Hoskin alleged that HCC was not a duly authorized corporation in Louisiana and, therefore, could not bring a judicial demand in the courts of this state. He also alleged that Prudential did not have a valid claim of reimbursement. Without written reasons, the district court on December 2, 1997, granted the exceptions, effectively dismissing HCC's petition of intervention. HCC now appeals.

Lack of Procedural Capacity and No Right of Action
Citing La.Rev.Stat. 12:314 A,[1] Mr. Hoskin asserts in his dilatory exception of lack of procedural capacity that HCC as a foreign corporation was not authorized to present a judicial demand in a Louisiana *738 court, because it has not been authorized to transact business in Louisiana by the Secretary of State. Similarly, in his peremptory exception of no right of action, Mr. Hoskin asserts that as Prudential's agent, HCC has no real interest in the litigation. Mr. Hoskin further asserts that HCC has no independent right of action, because Prudential has not assigned its rights of reimbursement in whole or in part to HCC.
Initially, we note that Mr. Hoskin's objection of no right of action to HCC's petition of intervention on behalf of Prudential may have been more properly made in the form of a dilatory exception of lack of procedural capacity. See Savoy v. Savoy, 542 So.2d 176 (La.App.3 Cir.1989); see also Martin Exploration Co. v. Joli Services, Inc., 360 So.2d 902 (La.App. 4 Cir.1978); cf. La.Code Civ. Proc. art. 700 and Note 3, infra. At any rate, the two exceptions will be discussed together, because the same reasoning applies to the underlying arguments for both exceptions in this case.
While it is true that HCC did not have proof of authorization to transact business in this state, we find that HCC as the representative or mandatary of Prudential was permitted by law to bring suit on behalf of its named principal. La.Code Civ. Proc. art. 694 provides that "[a]n agent has the procedural capacity to sue to enforce a right of his principal, when specially authorized to do so."[2] As discussed below, there is no question that HCC was "specially authorized" to bring suit on behalf of Prudential to enforce its right of reimbursement. The article further provides that "[f]or all procedural purposes, the principal is considered the plaintiff in such an action." La.Code Civ. Proc. art. 694. Because there is no allegation by Mr. Hoskin that Prudential, as the plaintiff "for all procedural purposes," does not have the necessary authorization to transact business in this state and to present any judicial demand in a court of this state, the dilatory exception of lack of procedural capacity does not lie.
Similarly, Mr. Hoskin's objection to HCC acting on behalf of Prudential, styled as a peremptory exception of no right of action, also does not lie in this case.[3] Mr. Hoskin makes no allegation that Prudential has no real interest in the claim asserted by HCC in the petition of intervention. Because HCC was a duly authorized representative of Prudential, empowered to file a judicial demand in its own name on behalf of its principal, Prudential was the plaintiff "for all procedural purposes" pursuant to La.Code Civ. Proc. art. 694. As such, there can be little doubt that Prudential has a real interest in the claim against the judgment proceeds as set forth in HCC's petition. Accordingly, the exception of no right of action would also not lie.
We thus turn to the question of whether HCC was in fact "specially authorized" to sue to enforce a right belonging to its principal, Prudential. Article 700 of the Code of Civil Procedure provides that when a representative or mandatary institutes suit on behalf of his principal, his authority is presumed "unless challenged by the defendant by the timely filing of the *739 dilatory exception." See Savoy v. Savoy, 542 So.2d at 177.
In support of his exception, Mr. Hoskin argued that Prudential has not assigned its claims of subrogation or reimbursement to HCC and, therefore, HCC, having no real interest in the matter, cannot assert those claims in its own name pursuant to La. Code Civ. Proc. art. 698.[4] Mr. Hoskin also argued that HCC is nothing more than a collection agency and that it has not complied with La.Rev.Stat. 9:3576.19, which requires the obligee to assign its claim to the agent for the purpose of filing suit. In response, HCC essentially concedes the policy contains no right of subrogation; however, it insists that the agreement with Prudential must be read as assigning Prudential's right of reimbursement to HCC. It points to this clause as support:
The Company [Prudential] hereby retains HCC for the purpose of pursuing the Plan's [Prudential's] subrogation, third party and reimbursement rights....
HCC also contends, perhaps alternatively in light of this clause, that Prudential retained it to seek reimbursement of the medical expenses and, therefore, it may assert the claim on Prudential's behalf as its agent. Although we do not find any transfer of the ownership interest in Prudential's right of reimbursement, either in whole or in part, we do find that the agreement between HCC and Prudential was a contract of mandate authorizing HCC to sue to enforce that right.
It is clear from the agreement submitted by HCC that Prudential has not transferred or assigned its reimbursement rights in whole or in part to HCC. Under the express terms of the agreement between HCC and Prudential, Prudential has "retain[ed]" HCC to "pursu[e]" Prudential's rights and "to identify, pursue, and collect reimbursement proceeds to which [Prudential] is entitled." Agreement, paras. 1 and 2. Prudential specifically reserved its right "to limit or direct...HCC's authority to settle claims." Agreement, para. 4. Although HCC was granted the discretion to settle a claim referred to it so long as Prudential did not notify HCC in writing otherwise, HCC was mandated to negotiate the settlement "in the best interest of [Prudential]," rather than HCC, and after considering certain conditions. Id. Also, though HCC had to obtain Prudential's consent before instituting any lawsuit against an insured, HCC was specially authorized to intervene in an insured's personal injury suit at any time and at its own cost. Agreement, para. 5. Additionally, the agreement required HCC "to perform its services...in compliance with all...laws, regulations, and ordinances," and to hold Prudential harmless for liability "arising out of HCC's services under this Agreement." Agreement, paras. 11 and 13. Finally, the agreement authorized HCC "to collect all reimbursements in its own name," though HCC was obligated to report any proceeds to Prudential on a monthly basis and to remit same minus HCC's fee. Agreement, para. 6. Prudential also kept "the right...to examine HCC's books and records pertaining to the services rendered under this Agreement." Agreement, para. 10.
An assignment or transfer of credits is a species of sale. Alco Collections, Inc. v. Poirier, 95-2582, p. 5 (La.App. 1 Cir. 9/27/96), 680 So.2d 735, 739, writ denied, 96-2628 (La.12/13/96), 692 So.2d 1067. Sale is a contract whereby a person transfers ownership of a thing to another for a price in money. La. Civ.Code art. 2439. A sale is perfect between the parties *740 when they consent as to the thing sold and the price. Id. In a sale, it is essential that the price be fixed by the parties in a sum either certain or determinable through a method agreed by them, otherwise no sale exists. La. Civ.Code art. 2464.[5]
In Alco Collections, Inc. v. Poirier, supra, the court was confronted with the issue of whether a licensed collection agency could file suit in its own name on a debt allegedly assigned to it on a contingency fee basis or whether such action constituted the unauthorized practice of law. There, the creditor had executed an instrument entitled "Assignment" purporting to assign the debt to the collection agency. After the collection agency filed suit, the debtor filed an exception of no right of action asserting that the agency had no real interest in the claim and that it was in effect engaging in the unauthorized practice of law.
The court in Alco Collections, Inc. v. Poirier first noted that the agreement did not name a fixed price for the transfer of the debt, because there was no stated monetary consideration for such a transfer, and the fee, if any, was contingent on the success of the agency's efforts. More pertinently, the court found that the agreement did not manifest an intent to transfer ownership of the debt from the creditor to the collection agency. The court noted that the agreement spoke of the agency's promise to make a good faith effort to collect the debt, including the filing of suit, and that the agreement referenced the creditor as the agency's "client." Further, the agency agreed to abide by the laws governing collection agencies and to hold the creditor harmless should it violate those laws, an agreement, the court noted, which would not be necessary had the creditor actually transferred the debt to the agency. Finally, the agreement specifically bound the agency to pay all costs associated with collecting the debt, an obligation the agency would logically have incurred had it owned and attempted to collect the debt itself. The court concluded there had been no assignment of an ownership interest in the creditor's right to the debt owed.[6]
Similarly, the instant agreement contains no language indicating that Prudential intended to assign, sell, convey, or transfer to HCC any ownership interest in the debt. By the terms of the agreement, Prudential effectively retained control over its reimbursement rights and the actions of HCC in securing those rights. The agreement clearly speaks in terms of HCC providing "services" to Prudential, rather than in terms of HCC acquiring or assuming any ownership interest in Prudential's rights. Furthermore, the paragraph in the agreement to which HCC would direct our attention as assigning it Prudential's reimbursement rights is partly whited out so as to delete the actual terms of the agreement concerning price. Therefore, we conclude that the agreement was not a *741 contract of sale assigning HCC any interest in Prudential's reimbursement rights.
Nonetheless, even though HCC would not have been permitted under La.Code Civ. Proc. art. 698 to sue in its own name to enforce a right in which it had no ownership interest, the agreement does "specially authorize" HCC to present a judicial demand on Prudential's behalf to secure Prudential's reimbursement rights. Under the doctrine of representation, a person may represent another person in legal relations as provided by law or by juridical act. La. Civ.Code art. 2985.[7] The authority of the representative may be conferred by a contract of mandate, in which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal. La. Civ.Code arts. 2986 and 2989. The contract of mandate may serve the exclusive or the common interest of the principal, the mandatary, or a third person. La. Civ.Code art. 2991. Express authority is required to perform certain acts. See La. Civ.Code arts. 2996 and 2997. Although Article 2997 of the Civil Code, both before and after its revision in 1997, does not specifically mention the representative prosecuting litigation to enforce a right of the principal, Article 694 of the Code of Civil Procedure requires the representative to be "specially authorized" to do so. La.Code Civ. Proc. art. 694, therefore, is an apparent reference to La. Civ.Code art. 2997. See Savoy v. Savoy, 542 So.2d at 177.
As previously set forth, we conclude the agreement between HCC and Prudential was a contract of mandate authorizing HCC to intervene in an insured's personal injury suit at any time and at HCC's cost, so as to secure Prudential's reimbursement rights. HCC's petition clearly states that it was intervening on behalf of its named principal, Prudential. Furthermore, Prudential is the plaintiff for all procedural purposes under La.Code Civ. Proc. art. 694. As such, Prudential certainly has an interest in the claim against the proceeds of Mr. Hoskin's judgment. Accordingly, we find that the district court erred in sustaining Mr. Hoskin's dilatory exception of lack of procedural capacity and his peremptory exception of no right of action.[8]

No Cause of Action
The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition. Dragon v. Cooper/T. Smith Stevedoring Co., Inc., 98-1375 (La. App. 4 Cir. 1/9/99), 726 So.2d 1006. It questions whether the petition sufficiently *742 alleges grievances for which the law affords a remedy. Lewis v. Aluminum Company of America, 588 So.2d 167 (La. App. 4 Cir.1991), writ denied, 592 So.2d 411 (La.1992). All well-pleaded allegations of fact must be accepted as true when considering an exception of no cause of action. Williams v. Touro Infirmary, 578 So.2d 1006 (La.App. 4 Cir.1991). The exception of no cause of action must be decided upon the face of the petition and any attached documents. Id. No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ. Proc. art. 931. The standard for granting an exception of no cause of action is as follows:
The burden of demonstrating that no cause of action has been stated is upon the mover or exceptor. In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the nonmoving party. In reviewing a trial court's ruling sustaining an exception of no cause of action, the [appellate court] should subject the case to de novo review, because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition.
In appraising the sufficiency of the petition, [the reviewing court] follow[s] the accepted rule that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. The petition should not be dismissed merely because plaintiffs allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide relief on any possible theory.
City of New Orleans v. Board of Com'rs, 93-0690 (La.7/5/94), 640 So.2d 237, 253 (citations omitted).
Thus, we must determine whether HCC's petition of intervention alleges sufficient facts, along with all reasonable inferences therefrom, which support any possible legal theory affording relief. The documents under consideration consist only of the petition and the attached exhibit. That exhibit contained the letter of October 9, 1996, purporting to effect a lien upon the judgment proceeds and an itemized list of medical expenses paid. The record does not show that the insurance policy was included in the exhibit attached to the petition.
In its petition, HCC specifically alleged: (1) that Mr. Hoskin was an insured under a health insurance policy or plan issued by Prudential; (2) that Prudential paid benefits to Mr. Hoskin pursuant to this policy; (3) that Mr. Hoskin obtained a judgment for damages arising out of a covered accident; (4) that HCC asserted a lien against the judgment in favor of Prudential; and (5) that Prudential is entitled to be reimbursed for all amounts of money paid to Mr. Hoskin, in accordance with the policy, for medical expenses he incurred in the treatment of injuries he sustained in the subject accident. These allegations, if proved, sufficiently support HCC's claim that Prudential is entitled under the insurance policy to all benefits paid to or on behalf of Mr. Hoskin as a result of the subject accident.
The issues presented in Mr. Hoskin's exception, such as whether the insurance policy actually requires Mr. Hoskin to return benefits paid to him, benefits to which he may or may not have been entitled, whether Mr. Hoskin expressly or implicitly agreed to reimburse Prudential for such benefits, and whether Mr. Hoskin was unjustly enriched, all go to the merits of Prudential's claim that it is entitled under the policy to reimbursement of the *743 these particular medical expenses paid to or on behalf of Mr. Hoskin. Such questions go to whether HCC can prove a set of facts that would entitle it to relief. See City of New Orleans v. Board of Com'rs, supra. The resolution of these issues requires an interpretation of the insurance policy and an examination of the factual circumstances surrounding the payment of the benefits; therefore, they are more properly the subject of a trial on the merits or of a motion for summary judgment, rather than an exception of no cause of action. Because the petition of intervention and the attached documents contain allegations sufficient to afford relief to Prudential, the district court erred in sustaining Mr. Hoskin's peremptory exception of no cause of action.

Conclusion
We conclude the district court erred in sustaining Mr. Hoskin's exceptions of lack of procedural capacity, no right of action, and no cause of action. The district court, therefore, erred in dismissing HCC's petition of intervention. Accordingly, the district court's judgment is reversed. The matter is remanded to the district court.
REVERSED AND REMANDED.
NOTES
[1] La.Rev.Stat. 12:314 A provides:

No foreign corporation transacting business in this state shall be permitted to present any judicial demand before any court of this state, unless it has been authorized to transact such business. The burden of proof shall rest upon the corporation to establish that it has been so authorized, and the only legal evidence thereof shall be the certificate of the secretary of state or a duly authenticated copy thereof.
[2] The Code of Civil Procedure continues to use the common law term "agent" rather than the term "representative" or "mandatary." The common law term "agency" was eliminated from the Louisiana Civil Code in the 1997 revision. See Comment (a), La. Civ. Code art. 2986, Revision Comments-1997.
[3] The peremptory exception of no right of action questions whether the party against whom it is asserted has an interest in judicially enforcing the right alleged against the exceptor. Thomas v. State of Louisiana, 545 So.2d 632 (La.App. 4 Cir.), writ denied, 551 So.2d 639 (La.1989). When considering the exception, the court must ask whether the party against whom the exception is asserted belongs to a particular class for which the law grants a remedy for a particular grievance or whether that party has an interest in judicially enforcing the right asserted. Touzet v. V.S.M. Seafood Services, Inc., 96-0225 (La.App. 4 Cir. 3/27/96), 672 So.2d 1011.
[4] La.Code Civ. Proc. art. 698 provides:

An incorporeal right which has been assigned, whether unconditionally or conditionally for purposes of collection or security, shall be enforced judicially by:
(1) The assignor and the assignee, when the assignment is partial; or
(2) The assignee, when the entire right is assigned.
An incorporeal is a thing that has no body, such as an obligation. La. Civ.Code art. 461.
[5] La. Civ.Code arts. 2465 and 2466, added by Acts 1993, No. 841, § 1, effective January 1, 1995, provide for when the price is left to the determination by a third person and when there is no priced fixed by the parties. Nevertheless, if the parties intend not to be bound unless a price is agreed upon, there is no contract of sale. La. Civ.Code art. 2466.
[6] After finding no valid assignment of an ownership interest in the debt, the court in Alco Collections, Inc. v. Poirier concluded that the filing of the suit by the agency constituted the unauthorized practice of law. The court also considered the applicability of the Collection Agency Regulation Act, La.Rev.Stat. 9:3576.1 et seq. Because there was no valid assignment of a debt owed, the court reasoned the Act, which ostensibly permits a non-lawyer to institute a lawsuit on behalf of a client to collect a debt, infringed upon the Supreme Court's power to define and regulate all facets of the practice of law. We need not reach that reasoning in this case, because HCC, as a specially authorized representative of Prudential, could file suit to enforce a right of its disclosed principal under La.Code Civ. Proc. art. 694. Furthermore, HCC retained counsel rather than initially filing suit in proper person in its own name. See also the discussion in Note 8, below.
[7] The articles on representation and mandate, found in Book III, Title XV of the Louisiana Civil Code of 1870, were revised by Acts 1997, No. 261, § 1, effective January 1, 1998. Section 2 of Acts 1997, No. 261 provides: "This Act shall apply to existing mandates and procurations, unless the application would impair obligations or vested rights."
[8] Whether or not HCC may be deemed a collection agency or debt collector subject to the requirements of the Collection Agency Regulation Act, La.Rev.Stat. 9:3576.1 et seq., the issue has no bearing on our reasoning in this case. The Act is primarily a licensing act, which sets forth civil and criminal penalties for failure to comply with the provisions of the Act. See La.Rev.Stat. 9:3576.2 and 9:3576.21 et seq. The Act specifically does not create a private right of action against the collection agency. See La.Rev.Stat. 9:3576.21(N) and 9:3576.23(C). Furthermore, the Act expressly provides that its provisions are "cumulative and nonexclusive and shall not affect any other civil or criminal proceeding authorized by law." La.Rev.Stat. 9:3576.7.

La.Rev.Stat. 9:3576.19, cited by Mr. Hoskin, grants a conclusive presumption of validity to the assignment of the claim in favor of a licensed collection agency that sues on behalf of its client, but only if the assignment is filed with the petition and the debtor does not object within five days. The provision, therefore, is not unlike the presumption set forth in La.Code Civ. Proc. art. 700. We do not read Section 9:3576.19 as requiring that a collection agency be licensed and have been assigned the claim before it may bring suit to collect the claim of its client. Notwithstanding our reading of this Section, whether HCC may be otherwise subject to penalties under the Act is not before us.