748 So.2d 649 (1999)
Elliot Robert DeBLANC, et al.
v.
INTERNATIONAL MARINE CARRIERS, INC. and Robert L. Torres.
No. 99-CA-0482.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1999.
Rehearing Denied January 14, 2000.
*650 Louis R. Koerner, Jr., New Orleans, Louisiana, Counsel for Plaintiffs/Appellants.
Gilbert V. Andry, III, Ellen E. Roniger, New Orleans, Louisiana, Counsel for Defendants/Appellees.
Court composed of Judge MOON LANDRIEU, Judge MICHAEL E. KIRBY, Judge ROBERT A. KATZ.
KIRBY, Judge
Plaintiff Elliot DeBlanc appeals the dismissal of his suit against his employer International Marine Carriers, Inc. and its president, Robert Torres on an exception of no cause of action.
We reverse.
On March 2, 1998, plaintiff filed suit in tort on behalf of himself and all others similarly situated against his employer, International Marine Carriers, Inc. and it's president Robert Torres. His original petition alleged as follows:
5.
Rather than comply with the procedures mandated by the United States Government and the Louisiana Department of Environmental Quality for the removal of asbestos and the remediation of asbestos-contaminated vessels, defendants caused petitioner, [...] to remove the asbestos by hand, without proper protective clothing, and without compliance with government and other normal and sensible safety precautions. In addition, the removed asbestos was stored in stockpiles in the open on land and was free to blow around the shipyard ... where it was inhaled by petitioner and petitioners were otherwise exposed to the hazards of this substance.....
6.
During the period of time in which the asbestos was being salvaged, defendant Torres would routinely ride his truck into the IMC yard, stirring up clouds of dust from asbestos ... under circumstances in which petitioner ... would be exposed to and would breath [sic] air contaminated with asbestos particles.
7.
Even after the onshore asbestos stockpiles were cordoned off by governmental authorities, IMC, directed by defendant Torres himself, ordered petitioner ... to put unprotected and uncontained asbestos into 55 gallon drums for disposal without utilizing proper safety procedures and despite the specific warnings and directions of the governmental authorities....
8.
Since the time that he left the employment of defendants, petitioner has begun to suffer from shortness of breath and easy fatigability that are associated with acute and chronic exposure to asbestos.
9.
The chronic conditions and other loss and damage suffered by petitioner are typical of the chronic effects of exposure to asbestos. To the knowledge of petitioner, other members of the class have begun to exhibit similar symptoms since they left the employment of the defendants.
10.
The loss and damage to petitioner and to other members of the class were caused by the intentional actions of the defendants. These actions were done with full knowledge of but in spite of the violation of mandatory prohibitory laws and general public knowledge concerning *651 the inevitable harm and damaging physical consequences of such unprotected exposure to asbestos.
* * *
12.
Petitioner and the other members of the class have also suffered mental anguish on account of their knowledge of the likelihood and/or inevitability of suffering from asbestosis and other disease processes in the future and their fear of the onset of the symptoms thereof.
Defendants filed an exception of no cause of action, claiming that plaintiff was precluded from asserting a cause of action in tort against his employer under the exclusivity provisions of the Louisiana Workmen's Compensation Act, La. R.S. 23:1032, subd. A(1)(a). The district court maintained defendant's exception on May 26, 1998 and granted plaintiff leave to amend his petition.
On June 5, 1998 plaintiff filed a first amended petition for damages and class action. That petition alleged as follows:
2.
Defendant, International marine Carriers, Inc. ("IMC") is the owner and operator of a marine salvage yard.... Defendant Torres is the President of IMC and made all the purchasing and salvage decisions which adversely affected and damaged petitioner and the other members of the class in that he decided which vessels to purchase, and he established the salvage procedures that he knew were substantially certain to cause the injury and damages to petitioner and the members of the class.
* * *
4
....The only way in which such salvage operations could be conducted in order to make the level of profits required by defendants was by means of the use of casual labor and by the salvage methods, described hereinafter, that were substantially certain to cause asbestos and the other disease processes from which petitioner and the other members of the class have suffered and/or will suffer.
5.
Rather than comply with the procedures mandated by the United States Government and the Louisiana Department of Environmental Quality for the removal of asbestos and the remediation of asbestos-contaminated vessels, defendants caused petitioner, ... to remove the asbestos by hand, without proper protective clothing, and without compliance with government or other normal and sensible safety precautions. In addition, the removed asbestos was stored in stockpiles in the open on land and was free to blow around the shipyard and be ground into equipment and roadways, where it was substantially certain to be inhaled by petitioner and petitioners were otherwise substantially certain to be and were in fact exposed to the hazards of this substance.
6.
During the period ... asbestos was being removed by hand and without proper safety precautions, defendant Torres would routinely ride his truck into the IMC yard, stirring up clouds of dust from asbestos that had been permitted to be ground into the roadways under circumstances in which petitioner and other members of the class were substantially certain to and were, to his knowledge, exposed to and breathed air contaminated with asbestos particles and under circumstances in which Torres knew of the exposure and the substantially certain consequences of exposure to asbestos.

*652 7.
Even after the asbestos that had been stockpiled onshore were [sic] cordoned off by governmental authorities who informed defendants of the risks associated with exposure to such hazardous substance, IMC, directed by defendant Torres himself, ordered petitioner and other members of the class to put unprotected and uncontained asbestos into 55 gallon drums for disposal without utilizing proper safety procedures, without personal protective equipment, and despite the specific warnings and directions of the governmental authorities who subsequently found out about and then stopped this practice.
8.
The injuries to plaintiff and to the other members of the class who were exposed to asbestos and injured thereby while working at the IMC facility. [sic] His and their injuries were intentionally caused by defendants, as follows:
a. Defendants were negligent in requiring petitioners to conduct their work removing asbestos and working on premises where asbestos was stored in the open without providing him and the with the safety equipment/respiratory devices which would have afforded him and them protection from the hazardous substance;
b. Defendants were substantially certain that petitioner and members of the class would sustain injuries as a result of exposure to asbestos, a hazardous substance, without proper safety equipment and are liable for their intentional acts in this respect;
* * *
d. Torres was the president and the main or only shareholder of IMC. He personally instructed petitioner and the members of the class to subject themselves to the hazardous substances and should therefore be personally responsible because he knew of the risks involved in these procedures and that petitioner and the members of the class were substantially certain to be injured by such unprotected exposure to asbestos.
* * *
11.
The loss and damage to petitioner and to other members of the class were caused by the intentional actions of the defendants. These actions were done with full knowledge of but in spite of the violation of mandatory prohibitory laws and general public knowledge concerning the inevitable harm and damaging physical consequences of such unprotected exposure to asbestos.
Defendants knew that petitioner and the members of the class were substantially certain to be exposed to asbestos and were substantially certain to suffer from asbestos to varying degrees. Defendants filed a second exception of no cause of action, claiming plaintiff had not asserted an intentional act of the employer that would satisfy the exception to the workers compensation exclusivity provision. On September 17, 1998 the district court, without giving reasons, maintained the employer's second exception of no cause of action and dismissed the plaintiff's suit.

LAW:
The function of the peremptory exception of no cause of action is to determine the legal sufficiency of the petition. It questions whether the petition sufficiently alleges grievances for which the law affords remedy. All well pleaded factual allegations must be accepted as true. The exception of no cause of action is decided upon the face of the petition. Hoskin v. Plaquemines Parish Gov't, 98-1825, p. 10 (La.App. 4 Cir. 8/4/99); 743 So.2d 736. No evidence may be introduced *653 to support or controvert the objection that the petition fails to state a cause of action. C.C.P. art. 931.
The standard for granting an exception of no cause of action is as follows:
The burden of demonstrating that no cause of action has been stated is upon the mover or exceptor. In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the nonmoving party. In reviewing a trial court's ruling sustaining an exception of no cause of action, the [appellate court] should subject the case to de novo review, because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition.
In appraising the sufficiency of the petition, [the reviewing court] follow[s] the accepted rule that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. The petition should not be dismissed merely because the plaintiffs allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide relief on any possible theory. Hoskin, supra at pp. 10-11, at 738 (quoting City of New Orleans v. Board of Commissioners, 93-0690 (La.7/5/94), 640 So.2d 237).
Under the Louisiana Workers Compensation Statute an employee who receives personal injury by accident arising out of and in the course of his employment is entitled to compensation from his employer in the amounts and on the conditions specified in the statute. R.S. 23:1031. R.S. 23:1032(A) provides that the worker's compensation remedy is the exclusive remedy an employee has for injury or compensable sickness or disease. However, paragraph B of Section 1032 says "nothing in this chapter shall affect the liability of the employer or any officer, director [or] stockholder ... resulting from an intentional act."
In the landmark case of Bazley v. Tortorich, 397 So.2d 475 (La.1981) the Louisiana Supreme Court held that the exclusive remedy rule did not apply to intentional torts or offenses. "The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did." Bazley at 482. In Bazley the Supreme Court found that the petition failed to state a cause of action in intentional tort or offense because "the pleadings do not express or imply that the co-employee garbage truck driver desired the consequences of his acts or omissions or that he believed that the consequences were substantially certain to result from them." Bazley at 482.
Code of Civil Procedure article 856 provides: "Malice, intent, knowledge, and other conditions of mind of a person may be alleged generally." (emphasis added). However, the mere insertion of the word "intentionally" does not transform an assertion of an unsafe workplace into an intentional act. Williams v. Charity Hospital of La., 499 So.2d 1260 (La.App. 4 Cir.1986).

DISCUSSION:
In light of the foregoing, the plaintiffs allegations recited above must be taken as true. Thus we must determine if an employee states a cause of action for intentional tort within the meaning of R.S. 23:1032(B) when he avers that his employer prescribed salvage methods that were substantially certain to cause asbestos and other disease processes; that instead of complying with government regulations *654 for removing asbestos the employer caused his employees to remove the asbestos by hand, without proper protective gear; that the employer allowed the asbestos to be stored in open stockpiles where it could be blown around and inhaled by employees; that the president drove his vehicle around the work area so that it stirred up clouds of asbestos that he knew were substantially certain to be inhaled by his employees and that he knew of the substantially certain consequences of asbestos exposure; and that after being warned of the risks of asbestos exposure and after the stockpiled asbestos had been roped off by government officials, the employer ordered petitioner to put asbestos into drums without following appropriate safety procedures and without personal protective equipment.
In brief, appellee asserts that appellants fails to offer any factual evidence in support of their allegations. However, as noted above, C.C.P. art. 931 prohibits evidence to support or controvert the allegations made in the petition. A test of the sufficiency of any available evidence may be made through a motion for summary judgment.
Insofar as the plaintiff's allegations concerning defendants' intent, appellee asserts plaintiffs'"must first establish an intent on the part of appellees to cause them injury." It is asserted that as a matter of law "these general allegations are insufficient to prove appellees specifically intended to harm appellants." Although C.C.P. art. 856 provides that intent maybe alleged generally, and the Williams, supra, case holds that a plaintiff may not merely state the defendant employer "intentionally" harmed him, here plaintiff has gone into specific detail. At the very least he has alleged that the defendant was specifically advised of the risks associated with asbestos exposure by government officials yet he ordered his employee to containerize the asbestos for disposal without protective equipment and without following proper procedures. (paragraph 7 of the amended petition.) He goes on to allege in paragraph 8(b) that defendant was substantially certain petitioner would sustain injuries from asbestos exposure. These allegations appear to meet the pleading requirements specified in Bazley, supra: "if the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." [citation omitted.]
Finally, appellee cites a number of cases in which the appellate courts have found the plaintiff failed to establish the requisite intent.[1] However in each of these cases the matter was addressed after trial on the merits or In conclusion, we reverse the trial court because we find the petition sufficiently alleges an intentional tort because it avers the on motion for summary judgment. In only two cases was the issue presented by way of the exception of no cause of action. In Cortez v. Hooker Chemical & Plastics Corp., 402 So.2d 249 (La.App. 4 Cir.1981) and Williams v. Charity Hosp. Of La., supra the court *655 found that merely using the word "intentional" did not suffice to state a cause of action.
In conclusion, we reverse the trial court because we find the petition sufficiently alleges an intentional tort because it avers the defendant had been warned of the danger of asbestos exposure, and further alleges defendant knew respiratory disease was substantially certain to result and yet defendant still required his employees to work without proper protective equipment, thereby causing plaintiff injury and damage. This falls within the Bazley, supra, dictum: "If the actor knows what the consequences are certain, or substantially certain to result from his act, and still goes ahead, he is treated by law as if he had in fact desired to produce the result." Id, at 482.
A motion for summary judgment or trial on the merits will test whether plaintiff can prove what he has alleged.
REVERSED AND REMANDED.
NOTES
[1] White v. Monsanto, 585 So.2d 1205, 1208 (La.1991); Jasmin v. HNV Central Riverfront Corp., 94-1497 ((La.App. 4 Cir. 8/30/94), 642 So.2d 311; Taylor v. Metropolitan Erection Co., 496 So.2d 1184 (La.App. 5 Cir.1986), writ den. 497 So.2d 1388 (La.1986); Williams v. Gervais F. Favrot, Inc., 573 So.2d 533 (La.App. 4 Cir.1991), writ denied, 576 So.2d 49 (La.1991); Adams v. Time Saver Stores, Inc., 615 So.2d 460, 463 (La.App. 4 Cir.1993), writ denied, 617 So.2d 910 (La. 1993); Holliday v. B.E. & K. Const. Co., 563 So.2d 1333 (La.App. 3 Cir.1990); Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4 Cir.1982), writ denied, 415 So.2d 953 (La.1982); Hood v. South Louisiana Medical Center, 517 So.2d 469 (La.App. 1 Cir. 1987); Armstead v. Boh Bros. Construction Co. Inc., 609 So.2d 965 (La.App. 4 Cir.1992); Bridges v. Carl E. Woodward, Inc., 94-2675 (La.App. 4 Cir. 10/12/95), 663 So.2d 458, 463, writ denied, 95-2735 (La.1/26/96), 666 So.2d 674; Dycus v. Martin Marietta Corp., 568 So.2d 592 (La.App. 4 Cir.1990), writ denied, 571 So.2d 649 (La.1990); Gray v. McInnis Bros. Const., Inc., 569 So.2d 656 (La.App. 2 Cir.1990).