831 So.2d 369 (2002)
James Leonard EZELL, Jr.
v.
Larry D. DYESS and Larry D. Dyess, A.P.L.C.
No. 2002-CA-0878.
Court of Appeal of Louisiana, Fourth Circuit.
October 23, 2002.
*370 R. Joshua Koch, Jr., Cynthia C. Branch, Spyridon, Koch Palermo, L.L.C., Metairie, LA, for Plaintiff/Appellant.
Nancy J. Marshall, Karen P. Holland, Deutsch, Kerrigan & Stiles, New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge DENNIS R. BAGNERIS, SR., and Judge DAVID S. GORBATY).
WILLIAM H. BYRNES III, Chief Judge.
This lawsuit arises out of the May 16, 2000, murder-suicide whereby Jacqueline Seal Gersfeld was shot by her estranged husband, Marvin Gersfeld, who then turned the gun on himself. Plaintiff-appellant, James Leonard Ezell, Jr., Jacqueline Gersfelds son by a prior marriage, sued Mr. Gersfeld's attorney, the defendants/appellees, Larry D. Dyess and Larry D. Dyess, A.P.L.C. (hereinafter collectively referred to as "Mr. Dyess" or as the "defendant"), for the wrongful death of his mother for having brought Mr. Gersfeld into proximity with Mrs. Gersfeld when he knew that Mr. Gersfeld was predisposed to violent behavior towards his wife. Pursuant to two Exceptions[1] of No Cause of Action the trial court dismissed plaintiff's action, with prejudice. We affirm.
On December 17, 1999, Marvin Gersfeld filed for divorce against Jacquelyn Seal Gersfeld in the 24th Judicial District Court for the Parish of Jefferson. Larry D. Dyess was retained as Mr. Gersfeld's counsel of record. Ms. Gersfeld contacted New Orleans Legal Aid Counsel (NOLAC) for assistance and Bernadette D'Souza was assigned to represent her. On February 28, 2000, Ms. D'Souza filed a Reconventional Claim for Divorce and Spousal Support against Mr. Gersfeld. Ms. D'Souza also obtained a Temporary Restraining Order against Mr. Gersfeld that was issued on February 29, 2000.
On April 17, 2000, an Interim Order was issued directing Mr. Gersfeld to pay interim spousal support of $200.00 a month to Ms. Gersfeld.
On May 9, 2000, a Consent Judgment was entered in the divorce proceeding, which, in pertinent part, prohibited both Mr. Gersfeld and Ms. Gersfeld from: (1) verbally abusing one another; (2) harassing one another; (3) contacting one another; (4) going within 100 yards of each other's residence; and (5) accosting one another.[2] According to the petition, the Consent Judgment was signed by both parties, as well as by Mr. Dyess and Ms. D'Souza.
*371 An interim support hearing took place on the morning of May 16, 2000, attended by the parties and their attorneys. At the conclusion of the hearing, Mr. Gersfeld was ordered to increase the amount of interim spousal support paid to Ms. Gersfeld to $300.00 per month. After leaving the courtroom, Mr. Dyess and Ms. D'Souza agreed to meet to inspect and photograph Ms. Gersfeld's automobile, which had allegedly been damaged by Mr. Gersfeld. According to the petition, Mr. Dyess drove Mr. Gersfeld to the agreed upon inspection location. Soon after arriving at that location, Mr. Gersfeld drew a handgun and shot Ms. Gersfeld two times. He then turned the gun on himself, killing himself instantly. Ms. Gersfeld died shortly thereafter.
This court, in Wallace C. Drennan, Inc. v. Sewerage & Water Bd. of New Orleans, 98-2423 (La.App. 4 Cir. 9/22/99), 753 So.2d 861, discussed the exception of no cause of action, including the applicable standard of review:
The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. It questions whether the petition sufficiently alleges grievances for which the law affords a remedy. All well-pleaded allegations of fact must be accepted as true when considering an exception of no cause of action. The exception of no cause of action must be decided upon the face of the petition and any attached documents. Hoskin v. Plaquemines Parish Government, 98-1825, p. 10 (La. App. 4 Cir. 8/4/99), 743 So.2d 736. No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ. Proc. art. 931.
The standard for granting an exception of no cause of action is as follows:
The burden of demonstrating that no cause of action has been stated is upon the mover or exceptor. In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the non-moving party. In reviewing a trial court's ruling sustaining an exception of no cause of action, the [appellate court] should subject the case to de novo review, because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition.
In appraising the sufficiency of the petition, [the reviewing court] follow [s] the accepted rule that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. The petition should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide relief on any possible theory. Hoskin, 98-1825, pp. 10-11, at 742 (quoting City of New Orleans v. Board of Com'rs, 93-0690 (La.7/5/94), 640 So.2d 237).
Drennan, 98-2423, p. 4, 753 So.2d at 864.
Both parties' arguments as to whether or not the plaintiff has sufficiently stated a cause of action against Dyess rely primarily upon the Louisiana Supreme Court's holding in Penalber v. Blount, 550 So.2d *372 577 (La.1989). In that case, the court noted that Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf; therefore, a non-client generally cannot hold his adversary's attorney personally liable for malpractice or for negligent breach of a professional obligation. The court explained that the intent of this rule is not to reduce the attorney's responsibility for her work, but rather to prevent a chilling effect on the adversarial nature of the practice of law and to prevent a division of the loyalty that an attorney owes to his client. The court went on to hold, however, that under the broad ambit of C.C. art. 2315, an attorney may be held personally accountable to his client's adversary for his intentional tortious conduct such as violating a known prohibitive statute. Id., 550 So.2d at 581-583. The Penalber court then offered the following description of how an intentional tort differs from a negligent act:
The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Restatement (Second) of Torts, American Law Institute § 13, (comment e) (1965). Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although... honestly believing that the act would not injure the plaintiff.... W. Prosser and W. Keeton, The Law of Torts, § 9 (5th ed.1984). [Citations omitted].
Id., 550 So.2d at 582.
In Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127, a case decided approximately five years after Penalber, the Louisiana Supreme Court further explained:
Of course, identifying an intentional tort in the context of an attorney's actions may be more difficult than identifying a traditional intentional tort.... Rather, we believe it is essential for the petition to allege facts showing specific malice or an intent to harm on the part of the attorney....
Montalvo, 93-2813, p. 4, 637 So.2d at 130.
The Montalvo court noted that while a court must accept the well-pleaded allegations of fact as true in deciding whether a petition states a cause of action, Louisiana nonetheless retains a system of fact pleading such that mere conclusions made by the pleader which are unsupported by facts will not be said to set forth a cause of action. Id., 93-2813, p. 6, 637 So.2d at 131.
Plaintiff in brief contends that he,
was not asserting a claim arising out of defendants' attorney-client relationship, but rather a claim based on defendant's simple negligence in transporting his client to within a few feet of Ms. Gersfeld, knowing of his threats against her, thereby placing his client in a position where he foreseeably could, and ultimately did, cause her physical harm.
We find that the plaintiff's pleadings, summed up as he himself described in his brief fail, as a matter of law, to set forth facts establishing the existence of a duty on the part of the defendants owed to the decedent. Plaintiff cites no even remotely analogous cases indicating the existence of a duty. Everything in plaintiff's pleadings indicate that his mother's death was the result of the intentional violent act of her estranged husband.
In the alternative, plaintiff asserts a claim for intentional tort because:
Here, defendant intentionally transported his client to within six to seven feet of Ms. Gersfeld, placing him in a position from which [he] foreseeably could, and did, cause physical harm to her.
*373 Plaintiff's theory is that where the defendants intended to bring Mr. Gersfeld to a location where Mrs. Gersfeld was known to be present, he is then responsible for the consequences of that act. Nothing in plaintiff's pleadings or briefs suggest that the defendants brought Mr. Gersfeld to that location with the expectation or desire that he murder his wife. For the plaintiff to prevail on this theory he would practically have to allege that the defendants brought Mr. Gersfeld to that location for the purpose of murdering his wife, i.e., plaintiff would have to have virtually alleged that the Dyess was an accomplice to the murder. Dyess may have known that Mr. Gersfeld harbored resentment towards his wife, but there is no suggestion that he expected or hoped for what occurred. Nothing plaintiff alleged in his pleadings was sufficient to make him complicit in the murder of Mrs. Gersfeld, a murder which must be attributed entirely to the intentional violent act of Mr. Gersfeld. Nothing in plaintiff's pleadings can be construed to suggest that Dyess acted with actual malice or in violation of a prohibitive law. Dyess did not violate the restraining order. Plaintiff cites no even remotely analogous cases suggesting that Dyess committed an intentional tort.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Defendants had excepted to both the Original and the First Supplemental and Amending Petition.
[2] Although the Consent Judgment was not made a part of this record, the parties are in general agreement as to its content.