839 So.2d 421 (2003)
Myrne CAMPBELL, et al.
v.
Vikrom S. SOTTIURAI, M.D., et al.
No. 2002-C-2223.
Court of Appeal of Louisiana, Fourth Circuit.
January 29, 2003.
Writ Denied May 9, 2003.
*422 John D. Rawls, and Judith A. Gic, New Orleans, LA, for Plaintiff/Respondent.
Mary Fuchs Gaudin, Mang, Batiza, Gaudin, Godofsky & Penzato, Metairie, LA, for Defendants/Relators.
(Court composed of Judge CHARLES R. JONES, Judge TERRI F. LOVE, Judge MAX N. TOBIAS JR.).
TERRI F. LOVE, Judge.
The relators, Drs. Sottiurai, Brown and Brown, seek review of a judgment denying their exception of no cause of action and in the alternative motion for summary judgment.
The instant case arises out of a survival action filed by the plaintiff, Myrne Campbell individually and as the executrix of the succession of Carol Campbell, against the relators and other named defendants for medical malpractice.
All well-pleaded allegations of fact must be accepted as true when considering an exception of no cause of action. The exception of no cause of action must be decided upon the face of the petition and any attached documents. Hoskin v. Plaquemines Parish Government, 98-1825, p. 10 (La.App. 4 Cir. 8/4/99), 743 So.2d 736. No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ. Proc. art. 931.
The standard for granting an exception of no cause of action is as follows:
The burden of demonstrating that no cause of action has been stated is upon the mover or exceptor. In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the non-moving party. In reviewing a trial court's ruling sustaining an exception of no cause of action, the [appellate court] should subject the case to de novo review, because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition.
In appraising the sufficiency of the petition, [the reviewing court] follow[s] the accepted rule that a petition should *423 not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. The petition should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide relief on any possible theory.
Hoskin, 98-1825, pp. 10-11, at 742 (quoting City of New Orleans v. Board of Com'rs, 93-0690 (La.7/5/94), 640 So.2d 237).
Taking all factual allegation of the petition to be true, we find that the respondent has stated a cause of action. It is not beyond doubt that the respondents can prove no set of facts in support of their claims. The respondents have alleged in their petition, among other things, that Carol Campbell signed a contract with Pendelton Hospital, consenting to treatment by their staff physicians, and that Dr. Steven D. Jones, relied on relators' opinions in treating Carol Campbell, opinions that were given without research or examination of the patient. Respondents argue that it was the reliance on these uninformed opinions that ultimately resulted in the death of Carol Campbell. We find that these allegations, accepting them as true, articulate a valid cause of action against the relators. Judgment on the facts of these allegations should be made at trial.
Relators argue alternatively that the trial court should have granted their motion for summary judgment, if it was determined that the respondents had stated a valid cause of action.
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
We find that there is a genuine issue of material fact as to whether a physician-patient relationship existed between relators' and Carol Campbell, and the extent to which Dr. Jones relied on the relators' opinions in treating Carol Campbell. Therefore, we find no error in the trial courts denial of relators' motion for summary judgment.
WRIT DENIED.
TOBIAS, J., dissents with reasons.
TOBIAS, J., dissents and assigns reasons.
I respectfully dissent. Although a close issue, I do not find that the respondent, Myrne Campbell, states a cause of action against the realtors.[1]
The respondent's petition alleges that on 11 or 12 August 1997, Ms. Carol Campbell ("Ms. Campbell") became ill, complaining that she was spitting up blood. The respondent consulted Ms. Campbell's family physician, James A. Rogers, M.D., by telephone, and Dr. Rogers prescribed some medication over the telephone. In the early morning hours of 13 August 1997, Ms. Campbell was still experiencing the same *424 symptoms. The respondent again consulted Dr. Rogers by telephone to inform him that she was taking Ms. Campbell to Southern Baptist Hospital (Memorial Medical Center, Uptown Campus). Dr. Rogers informed the respondent that he was on staff at East Jefferson General Hospital. The respondent called emergency medical service and requested that the ambulance take Ms. Campbell to East Jefferson. However, Ms. Campbell was transported to Pendleton Memorial Methodist Hospital. She was admitted into the hospital through the emergency room and assigned to Larry Wooden, M.D., one of the named defendants. Harold T. Shelby, M.D., Steven D. Jones, M.D., and Jan T. McClanahan, M.D., all performed consultations or examinations on Ms. Campbell and are all named as defendants, as is Dr. Rogers.
After Ms. Campbell arrived at the hospital, the respondent again spoke to Dr. Rogers by telephone; and the respondent alleges Dr. Rogers refused to see Ms. Campbell at Methodist Hospital.
The respondent alleges one or more of the defendants sought Ms. Campbell's consent to perform a surgical procedure on her by presenting her with a surgery consent form that stated the procedure would be an exploratory laparotomy, by creating a long incision in the abdomen to look around and fix or remove any diseased organs. The respondent further alleged that the physicians, the written consent form, and hospital representatives failed to inform her or Ms. Campbell of the possibility of the gangrenous condition actually found during the surgery. The respondent alleges Dr. Jones informed her and Ms. Campbell verbally that the worst surgical result would be colostomy.
Shortly after Ms. Campbell's arrival at the hospital, Dr. Jones and Johnny L. Gibson, M.D., performed the exploratory laparotomy on Ms. Campbell, during which the doctors discovered Ms. Campbell had a superior mesenteric artery occlusion with gangrenous small bowel and right colon.
The respondent's petition alleges that during the surgery, Drs. Jones and Gibson consulted the relators, Vikrom S. Sottuirai, M.D., Thomas C. Brown, M.D., and James E. Brown, M.D., two by telephone and one orally, and that during the consultations, the relators rendered an opinion on Ms. Campbell's prognosis and the availability (or lack thereof) of a remedial surgical procedure that would offer Ms. Campbell a chance of survival, all without examining Ms. Campbell or researching the medical literature on the subject. Drs. Jones and Gibson terminated the surgery without taking any further action other than the discovery of Ms. Campbell's condition. The respondent alleges the relators' actions or inaction, when presented with Ms. Campbell's condition, was tantamount to withholding medical treatment, which was done without the respondent's consent.
According to the narrative prepared by Dr. Jones upon inspection of Ms. Campbell's intestines, it was clear that there was nothing to offer the patient medically. Ms. Campbell was terminal, and the only measure available was to make Ms. Campbell comfortable in her remaining days. Seventeen days after entering the hospital, Ms. Campbell died. Dr. Jones stated that the respondent was informed of Ms. Campbell's condition, but refused to accept it by insisting that Ms. Campbell be given IV antibiotics and hyperalimentation, which prolonged Ms. Campbell's death.
The respondent alleges Ms. Campbell's death was the result of negligence on the part of all defendants, including relators. Specifically, the respondent alleges that the defendants, Drs. Jones and Gibson, relied on the advise of the relators, who failed to possess and/or apply the minimal level of medical knowledge necessary to *425 recognize Ms. Campbell's life threatening intra-abdominal condition, as well as a long list of other negligent actions found in the respondent's petition.
To the petition the relators filed an exception of no cause of action and, alternatively, a motion for summary judgment. The trial court denied the exception.
The relators complain the trial court erred in denying their exception of no cause of action and, alternatively, motion for summary judgment.
Liability for malpractice is dependent on the existence of a physician-patient relationship. The existence of the traditional physician-patient relationship on which such liability hinges uniformly has been held to depend upon the existence of a contract, express or implied, that the doctor will undertake to treat the patient or at least engage in diagnosis as a prelude to treatment. Green v. Walker, 910 F.2d 291 (5th Cir. 1990). Determining the existence of an obligation or duty in a particular situation, including the determination of a physician-patient relationship, is a question of law. Id., citing Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988). Generally, a physician-patient relationship is created only where the physician personally examines the patient. Louisell & Williams, Medical Malpractice, Sec. 8.03, at 8-19 to 20 (1998).
The precise issue before us is whether the physicians, who were contacted by telephone or orally by the physicians performing the medical procedure, can be liable for their advice. I can find no Louisiana case that is precisely on point with the facts presented in the instant case. I, therefore, resort to the jurisprudence of other jurisdictions to ascertain how they have addressed the issue.
First, I note that in Hutchinson v. Patel, 93-2156 (La. 5/23/94), 637 So.2d 415, a case cited by the relators, the Louisiana Supreme Court addressed an issue that is somewhat analogous to the instant case. In Hutchinson, a wife sued a hospital and her husband's psychiatrist for an alleged failure to warn or take reasonable precautions to protect her against the threat of physical violence communicated to the psychiatrist by the husband. The Supreme Court was faced with answering whether the doctor committed malpractice by not warning the wife of the possible danger. The Court found that the doctor's duty of care to his patient, the husband, was distinct from his duty to warn a third party, the wife, of a possible danger by the patient. Therefore, the wife's claim of malpractice for failing to warn did not fall under the malpractice statute.
In Corbet v. McKinney, 980 S.W.2d 166, 170 (Mo.App. E.D. 1998), a patient, admitted to a hospital through the emergency room, brought a medical malpractice action against a physician who consulted with the patient's treating physician by telephone. The Corbet court found:
[W]here the consulted physician merely undertakes to advise the patient's treating physician, has no explicit contractual obligation to the patient, treating physician, or treating hospital to provide care, and does not take actions which indicate knowing consent to treat a patient who has sought that treatment, such as by examining, diagnosing, treating, prescribing treatment for or charging the patient, no relationship and no duty of care arises. Accordingly, courts which have been asked to determine the existence of a physician-patient relationship in factual situations similar to the one before us have found none.
Accord, Schrader v. Kohout, 239 Ga. App. 134, 522 S.E.2d 19 (1999).
James L. Rigelhaupt, Jr., the writer in What Constitutes Physician-Patient Relationship *426 For Malpractice Purposes, 17 A.L.R.4th 132, Sec. 9, discusses Oliver v. Brock, 342 So.2d 1 (Ala. 1976), a malpractice action brought on behalf of a minor patient against a physician who consulted on the treatment of the minor's injuries as a result of an automobile accident. The court found that the physician had only provided technical medical information, and that a physician-patient relationship had never existed. The requisite relationship was lacking because the physician had never seen the patient and the doctor had never been asked and was not requested to serve as a consultant in the case by the parents or the treating physician.
The language of the initial agreement to pay for services signed by Ms. Campbell, and the surgical consent form signed by the respondent, created a contractual relationship between Ms. Campbell and her treating physicians. One document relating to conditions of services/payment guarantee, which contains paragraph "I", entitled authorization and consent for treatment, provides in part:
I voluntarily authorize and consent to examinations, tests, procedures, and medical treatment by employees and agents of Pendleton Memorial Methodist Hospital, physicians, and their designees, as deemed advisable in their professional judgment.
* * *
I understand that risks may be associated with diagnosis and treatment and acknowledge that no guarantees have been made to me regarding results of examinations or treatments. (Emphasis added.)
The surgical consent form, signed by the respondent on Ms. Campbell's behalf, provides in pertinent part:
6(a) No Guarantees: All information given me and, in particular, all estimates made as to the likelihood of occurrence of risks of this or alternate procedures or as to the prospect of success, are made in the best professional judgment of my physician. The possibility and nature of complications cannot always be accurately anticipated and, therefore, there is and can be not guarantee, either express or implied, as to the success or other results of the medical treatment or surgical procedure.
* * *
6(g) Consent: I hereby authorize and direct the designated authorized physician/group named together with associates and assistants of his choice, to administer or perform the medical treatment or surgical procedure described in item 2 of this consent form, including any additional procedures or services as they may deem necessary or reasonable including the administration of general or regional anesthetic agent, transfusion of blood or blood components, x-rays or other radiological services laboratory services and the disposal of any tissue removed during a diagnostic or surgical procedure.
Although the respondent relies on the above-cited forms in order to try to create a written or express contractual physician-patient relationship between Ms. Campbell and the treating physicians, which was then extended or imputed to the relators when Drs. Gibson and Jones consulted them during surgery, I find nothing in the documents that supports a finding that a physician-patient relationship was created when the treating physicians consulted with the relators. Additionally, when the paragraphs are read in context with the remainder of the documents, it appears that Ms. Campbell, and the respondent as her next of kin, agreed to allow the treating physicians to care for Ms. Campbell to *427 the best of their abilities without any guarantees of success or outcome.
In the instant case, based on the court's findings in Corbet, supra, the relators did not have a physician-patient relationship with Ms. Campbell. The relators did not create an implied or express contract with Ms. Campbell to treat her because they did not (1) examine her, (2) make any diagnoses in her case, (3) prescribe treatment, or (4) charge or attempt to charge her for services rendered. Additionally, based on Oliver, supra, the relators gave only technical medical information to Drs. Jones and Gibson; stated another way, they merely offered opinions based upon a case history related to them. Accordingly, no physician-patient relationship existed or can be recognized.
I note that the respondent cites La. R.S. 37:1262(1) for the proposition that the relators' phone consultations fell within the statute's definition of the practice of medicine; the respondent reasons therefrom that the relators had a duty to Ms. Campbell. The statute provides:
(1)"The practice of medicine", whether allopathic or osteopathic, means the holding out of one's self to the public as being engaged in the business of, or the actual engagement in, the diagnosing, treating, curing, or relieving of any bodily or mental disease, condition, infirmity, deformity, defect, ailment, or injury in any human being, other than himself, whether by the use of any drug, instrument or force, whether physical or psychic, or of what other nature, or any other agency or means; or the examining, either gratuitously or for compensation, of any person or material from any person for such purpose whether such drug, instrument, force, or other agency or means is applied to or used by the patient or by another person; or the attending of a woman in childbirth without the aid of a licensed physician or midwife.
Although one can agree that the relators were practicing medicine, no privity existed between them, the respondent, and Ms. Campbell. The breach of a duty, if any, that may have occurred would be the duty owed to Drs. Jones and Gibson, not the respondent or Ms. Campbell. The duty did not flow through Drs. Jones and Gibson to the respondent or Ms. Campbell.
In support, the respondent cites Diggs v. Arizona Cardiologists, Ltd., 198 Ariz. 198, 8 P.3d 386 (Ariz.App. 2000), review denied. In Diggs, the patient's surviving family members brought a medical malpractice action against the emergency room physician, the cardiologist, and the hospital alleging that patient was brought to the hospital with severe chest pain but that, after the treating physician consulted with the cardiologist, the patient was released by the physician and died of a heart attack three hours later. The court found that the cardiologist had a duty of care to the patient although there was no contractual physician-patient relationship between the cardiologist and the patient.
The case at bar is distinguishable from Diggs. The consultation of the cardiologist in Diggs went beyond the brief consultation in this case. The cardiologist, though not the cardiologist on call at the time, was an employee of the hospital. The cardiologist had the opportunity to become familiar with the patient's history, as well as the results of the patient's physical exam. The cardiologist reviewed the results of an EKG performed on the patient. In the case at bar, the respondent does not alleged that the realtors were employees of the hospital; even if they were, the fact that the relators were consulted by telephone or orally made it physically impossible for them to examine Ms. *428 Campbell. In any event, the relators did not examine Ms. Campbell.
The respondent also cites Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La. 1984), to support the proposition that the relators had a duty to Ms. Campbell. In Harris, a wrongful death action was brought in connection with the death of one bystander and personal injuries of another bystander resulting from armed robbery at a restaurant. The Louisiana Supreme Court found that the restaurant had a duty, once it hired a security guard, to have the guard protect its patrons from criminal activity of third persons in a reasonable and prudent manner. Harris is inapplicable to the instant case, but even if applicable, is distinguishable. The restaurant in Harris did not have a duty to provide security for its customers. However, when the restaurant chose to provide security, the duty to do so in a reasonable prudent manner was created. The relators, like the physician in Oliver, supra, were not asked and did not volunteer to be consultants in Ms. Campbell's care. Again, the relators never saw Ms. Campbell, and they never provided her with care or treatment in any way.
I also find unpersuasive the respondent's alternative argument that if this court finds no physician-patient relationship existed between Ms. Campbell and the relators, the respondent should be allowed to amend her petition to allege that the relators invaded Ms. Campbell's privacy. The plaintiff appears to urge that the relators, by answering a phone call from the treating physicians, invaded Ms. Campbell's privacy by participating in the conversation. The relators had no way of knowing what the call was about before it was answered. Additionally, the respondent has not shown that the relators were told any information that disclosed the identity of Ms. Campbell.
A practical consideration also supports a finding that the respondent fails to state a cause of action. That consideration[2] is as follows:
A person presents at an emergency room with a serious condition with which the physician on duty is unfamiliar how to treat the patient, or the better procedure by which to treat. The physician has essentially two options: first, he can consult written medical texts and articles as to how to proceed (for which there may not be time based upon the patient's condition); alternatively, he can call or orally contact a physician to consult about that which is being presented to him. If the physician who wrote the text or article, or the physician orally contacted, fears that he may be used for what he or she wrote or for what he or she says in the consultation, no physician will write or consult. The physician in the emergency room will, under those circumstances, just have to use his best educated judgment, or as phrased in the slang of today, "wing it."
To hold the relators liable under the facts and circumstances as are present in the case at bar is unsupportable. The respondent states no cause of action against these relators. Accordingly, I would grant the relators' writ, reverse the judgment of the trial court, and remand for further proceedings against the remaining defendants.
NOTES
[1] The issue before the court appears to be res nova in Louisiana The issue is not provided for by statute. My conclusions and analysis are based upon the principles set forth in La.C.C. art. 4.
[2] The consideration is material to physicians and health care facilities in rural areas where the ability to obtain health care services is most difficult.