808 So.2d 765 (2002)
Katherine Marie RUTLEDGE
v.
HIBERNIA CORPORATION, d/b/a Hibernia National Bank.
No. 2000-CA-0674.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 2002.
Angela S. Bryson, Cary B. Bryson, Bryson Law Firm, Lafayette, LA, Counsel for Plaintiff/Appellant.
John F. Weeks, II, Usry & Weeks, Metairie, LA, Counsel for Defendant/Appellee.
*766 Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY.
KIRBY, Judge.

STATEMENT OF THE CASE:
Ms. Katherine Marie Rutledge, (Rutledge) filed a "Petition for Damages Due to Negligence and Breach of Contract" against Hibernia National Bank (Hibernia) on June 25, 1999. Hibernia filed an exception of no cause of action on July 27, 1999. The trial court sustained Hibernia's exception on September 28, 1999 and dismissed Rutledge's suit with prejudice. She now appeals the granting of the exception of no cause of action asserting two assignments of error: 1) The trial court erred in finding that the petition failed to state a cause of action and 2) Alternatively, the trial court erred by failing to give Ms. Rutledge an opportunity to amend her petition to remove the grounds asserted in the exception as allowed by La. C.C.P. art. 934.

STATEMENT OF THE LAW
We recently summarized the legal principles applicable to exceptions of no cause of action, to wit:
The function of the peremptory exception of no cause of action is to determine the legal sufficiency of the petition. It questions whether the petition sufficiently alleges grievances for which the law affords remedy. All well pleaded factual allegations must be accepted as true. The exception of no cause of action is decided upon the face of the petition. Hoskin v. Plaquemines Parish Gov't, 98-1825, p. 10 (La.App. 4 Cir. 8/4/99) 743 So.2d 736[, 742]. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. C.C.P. art. 931.
The standard for granting an exception of no cause of action is as follows:
The burden of demonstrating that no cause of action has been stated is upon the mover or exceptor. In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the nonmoving party. In reviewing a trial court's ruling sustaining an exception of no cause of action, the [appellate court] should subject the case to de novo review, because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition.
In appraising the sufficiency of the petition, [the reviewing court] follow[s] the accepted rule that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief. The petition should not be dismissed merely because the plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide relief on any possible theory. Hoskin, supra at pp. 10-11, at 742 (quoting City of New Orleans v. Board of Commissioners, 93 0690 (La.7/5/94), 640 So.2d 237).
DeBlanc v. International Marine Carriers, Inc., 99-0482, pp. 5-6, (La.App. 4th Cir.12/15/99); 748 So.2d 649.
Article 934 of the Louisiana Code of Civil Procedure provides that when a court *767 sustains a peremptory exception, and the grounds therefor may be removed by amendment of the petition, the judgment sustaining the exception shall generally permit such amendment to be filed.

THE PETITION:
Ms. Rutledge's petition alleges that beginning in 1986 she began working for a Mrs. Bohrisch.[1] Ms. Rutledge took care of Mrs. Bohrisch's personal needs including household duties, maintaining the household and certain rental properties. She avers she served as Mrs. Bohrisch's personal care attendant. As Mrs. Bohrisch grew older Ms. Rutledge's duties and work hours increased steadily. In September of 1997 Ms. Rutledge alleges that Mrs. Bohrisch's health had deteriorated such that Ms. Rutledge was providing care for ten to twelve hours per day, sometimes sleeping on the floor next to Mrs. Bohrisch's bed in case she was needed during the night.
The petition alleges that "to facilitate Ms. Rutledge's service and in recognition of the trust" Mrs. Bohrisch had her attorney prepare a power of attorney in favor of Ms. Rutledge. The power of attorney was recorded in the records of Jefferson Davis Parish and a copy was attached to the petition. The power of attorney was "unlimited" and gave Ms. Rutledge the authority to perform all acts for Mrs. Bohrisch that she would be legally able to perform for herself.
Around March or April of 1998, Mrs. Bohrisch had Ms. Rutledge assist her in making two donations to family members. While at the bank acquiring the funds for one of the donations, Mrs. Bohrisch instructed Ms. Rutledge to cash a Certificate of Deposit in Hibernia worth about $59,000.00. Ms. Bohrisch told Ms. Rutledge that she intended to give Ms. Rutledge the money because "she wanted her to have it." Ms. Rutledge avers she accepted the donation, but suggested that the transaction be completed later.
On June 26, 1998 Ms. Rutledge went to the Hibernia Bank in Jennings, LA. where she advised two bank employees that Mrs. Bohrisch wanted to redeem the Certificate of Deposit and donate the cash to Ms. Rutledge. Ms. Rutledge also told the two bank employees that she wanted the funds placed in a certificate of deposit in her own name in Hibernia. According to the petition, bank employees gave Ms. Rutledge various forms for her to fill out to redeem the certificate of deposit and deposit the funds therefrom in a certificate in her own name. It is alleged that Ms. Rutledge properly completed the paperwork, that a bank employee informed her the paperwork would be sent to Hibernia's New Orleans office for processing and that the bank employees were aware of Ms. Rutledge's power of attorney on behalf of Mrs. Bohrisch.
Mrs. Bohrisch died on July 26, 1998. Thereafter Ms. Rutledge returned to the Hibernia branch to inquire about the delay in delivery of her certificate of deposit. One of the bank employees with whom she had previously dealt told Ms. Rutledge that the bank had failed to process the paperwork properly and that a "boo boo" had occurred in New Orleans. The certificate was thus still in Mrs. Bohrisch's name and it had not been redeemed in accordance with the paperwork. It is alleged on information and belief that the subject certificate of deposit was paid or delivered to Mrs. Bohrisch's succession.
The petition alleges that the failure to properly process the paperwork was due *768 solely to the fault and or negligence of Hibernia. Alternatively, the petition makes an allegation in tort that the proximate cause of Ms. Rutledge's damages is the negligence and actionable fault of Hibernia in several listed, non exclusive particulars. In the further alternative Ms. Rutledge avers that the completion of the paperwork and the communications with the bank created a contract between her and Hibernia which Hibernia breached by failing to redeem the certificate and deliver to her a certificate with those funds in her name.

THE EXCEPTION:
The peremptory exception, filed July 27, 1999, was based upon the assertion that the power of attorney given by Mrs. Bohrisch to Ms. Rutledge did not authorize plaintiff to enter into the transaction at issue. Specifically, the basis is that the power of attorney, although expansively worded, did not authorize Ms. Rutledge to make a donation of her principal's funds to herself. The argument is premised upon La. Civil Code Articles 2997 and 2998. Article 2997 requires express authority from the principal for the mandatary to make an inter vivos donation while article 2998 prohibits a mandatary who represents his principal as the other contracting party from contracting with himself unless he is authorized by the principal, or, in making such a contract, he is merely fulfilling a duty to the principal. Hibernia contends that the power of attorney contains no express authorization for Ms. Rutledge to make any donation of Mrs. Bohrisch's funds to anyone, much less to herself.
Ms. Rutledge opposed the exception claiming that the transaction sub judice was not subject to the provisions of the Civil Code but rather were governed by the commercial laws, specifically La. R.S. 10:3-203(e). Secondly, she contended the donation was not an inter vivos donation but a remunerative donation, not subject to the formal requirements relating to mandataries and donations. Thirdly, Ms. Rutledge asserted that certain language[2] in the power of attorney constituted express authority to make donations inter vivos. Finally, she claims that the requirements of articles 2997 and 2998 are satisfied by the express verbal authorization given by Mrs. Bohrisch to Ms. Rutledge.
The trial court ruled from the bench, stating he did "not think there was a cause of action here under Civil Code Article 2997."

DISCUSSION:

COMMERCIAL LAWS:
La. R.S. 10-3-203(a) provides that an instrument is transferred when it is delivered by someone other than its issuer to a recipient for the purpose of giving the recipient the right to enforce the instrument. Paragraph (e) states that donations inter vivos of instruments "shall be" governed by the provisions of Chapter 3 of Title 10 "notwithstanding any other provision of the La. Civil Code or of any other law of this state, relative to the form of donations inter vivos, to the contrary." [emphasis added.] Civil Code Article 2997 requires express authority for a mandatary to contract with himself while representing his principal unless he is authorized by the principal or, in making the *769 contract, he is merely fulfilling a duty to the principal.
We do not find a conflict between these statutory provisions as they apply to this case. La. R.S. 10:3-203(e) provides that the commercial laws provide the form of the donation. In this regard it supercedes, so to speak, the provisions of Section 2 of Title II of Book Three of the Civil Code (articles 1536-1558). However, La. R.S. 10:3-203 has no application to the law of representation and mandate, Title XV of Book III of the Civil Code. It is in this title that we find the articles relied upon by Hibernia, articles 2997 and 2998.
Thus, while it may have been permissible for the instrument to have been donated by mere transfer,[3] in order for that transfer to have been legally accomplished by Ms. Rutledge pursuant to the power of attorney she must have been expressly authorized 1) to make inter vivos donations and 2) to self deal. We have carefully reviewed the power of attorney at issue here. It is truly general in nature and very broadly drawn. In the first numbered paragraph thereof Ms. Rutledge was authorized:
(1) to buy, receive, lease, accept or otherwise acquire to sell, convey, mortgage, hypothecate, pledge, quit claim, to let, lease ... or otherwise encumber or dispose of or to contact or agree for the acquisition, disposal or enumbrance[encumbrance] of any property whatsoever and wheresoever situated....
Conspicuously absent from this litany of authorized transactions is "donate." Admittedly it could be argued that the word "convey" could be construed to permit a donation. However, we consider the word in the context of the other words with which it is associated in the power of attorney. The words "sell," "mortgage," "hypothecate," and "pledge" each connote in some fashion either generating cash flow to Mrs. Bohrisch or giving security for her debts. They do not connote gratuitous transactions made from a spirit of liberality that usually distinguish a donation inter vivos from other transactions. See, Succession of Aucoin, 99-2171 (La.App. 1st Cir.11/8/00) 771 So.2d 286.
However, even if we were to conclude that Ms. Rutledge was authorized to donate her principal's property, there is no language in the power of attorney that could remotely be construed to authorize her to donate property to herself or to otherwise self deal. Thus, we conclude pursuant to La. C.C. art. 2998 that Ms. Rutledge was not authorized under the power of attorney to make a donation of the proceeds of the certificate of deposit to herself. She thus has no cause of action on this basis. This failure of the power of attorney to specifically authorize self-dealing is also fatal to Ms. Rutledge's third argument, that the language in paragraph 3 of the power of attorney authorized her to make the donations.

REMUNERATIVE DONATION:
In Louisiana there are three kinds of donations inter vivos: the gratuitous, that made without condition and merely from liberality; the onerous, that which is burdened with charges imposed on the donee; and the remunerative, that made as a recompense for services rendered. C.C. art. 1523. The remunerative donation is not a real donation if the money value of the services recompensed is "little inferior to that of the gift." C.C. art. 1525. The rules peculiar to donations inter vivos do not apply to remunerative donations, unless the value of the object given exceeds by one-half the value of the services. C.C. art. 1526. We have found no cases that *770 have precisely set forth the elements that must be pled by one attempting to establish a remunerative donation.
We have found some cases which, after trial, analyzed what had been proved in support of the claim. In Succession of Theriot, 532 So.2d 260 (La.App. 3rd Cr.1988), a case somewhat similar to this one, Mrs. Trahan claimed ownership of certain certificates of deposit in her name and that of the decedent, jointly. It appears that Mrs. Trahan was not related by blood or marriage to the decedent, but she and her family were very close to the decedent and her late husband. At the Theriots' request Mr. Trahan gave up regular employment as a drilling consultant, and moved his wife and family into the Theriot's home after Mr. Theriot had a stroke. The Theriots wanted the Trahans to care for them in their twilight years. Mrs. Trahan assisted with housework, including caring for Mr. Theriot, a stroke victim. Mr. Trahan devoted most of his time to managing the Theriots land and cattle. The court found that Ms. Trahan proved 1) services were rendered; 2) that the services were valuable and appreciable in money; 3) the extent of the services rendered; and 4) the value of the service. These seem to us the appropriate elements that should be plead by one seeking recognition of a remunerative donation.
Assessing the petition filed by Ms. Rutledge we find that she avers services were rendered to Ms. Bohrisch in paragraphs 2, 3 and 4. To the extent the petition alleges plaintiff began working in 1986, that her duties and hours of employment increased steadily and that in September of 1997 she was providing care for ten to twelve hours a day we conclude that the petition alleges facts, that if proved at trial, would show the services were valuable, appreciable in money and the extent to which those services were provided. However, the petition contains no allegations pertaining to the value of the services rendered by Ms. Rutledge to Ms. Bohrisch. We find this to be a critical and fatal omission because C.C. art. 1526 only exempts the remunerative donation from the rules peculiar to donations when the value of the donated object does not exceed by one half the value of the services rendered. In other words, the services rendered must be worth at least two-thirds of the value of the property. Thus, the failure to allege the value of the services in relation to the value of the gift is a failure to address the one element that distinguishes the remunerative donation from the gratuitous donation.
We conclude for the reason just stated the petition fails to state a cause of action. However, in accordance with C.C.P. art. 934 we remand the matter to the district court with instruction to allow plaintiff a reasonable time within which to amend her pleadings to cure the defect, if she can.

VERBAL AUTHORITY:
We also conclude that there is merit to the final argument, to the effect that Ms. Rutledge was verbally expressly authorized to make the donation to herself. In this regard we find Tedesco v. Gentry Development, Inc., 540 So.2d 960 (La.1989) instructive. There, the issue was whether the president of a corporation, in the absence of written authorization from his board of directors, could bind the corporation to sell certain real estate. Citing the then Civil Code articles 2996[4], 2997[5] and *771 2440[6] the Supreme Court held that "in the sale of immovable property written authority is required for an agreement to sell or a contract of sale." [Emphasis added.] It is at once apparent that the Supreme Court considered the word "express" to mean "written" authority.
We note that this holding has been criticized because former articles 2996 and 2997, while requiring "express" authority such authority could be oral as well as written. See: Representation, Mandate, and Agency: A Kommentar on Louisiana's New Law, 73 Tulane Law Rev. 1087 (1999) at 1123. However, when the legislature revised these laws in 1997 it did nothing to change the authoritative construction of the words "express authority" in articles 2996 and 2997. We therefore conclude the legislature intended for the word "express" authority to mean "written" authority in the revised articles.
Significantly, when the new article 2998, concerning self dealing by a mandatary, was added to the civil code in the same 1997 revisions, no adjective was used to modify the word "authority." It seems clear to us, then, that the legislature, aware of the Tedesco, supra, holding, did not intend to require a writing for the principal to authorize his mandatary to self deal. This result is consistent with the provisions of La. R.S. 10:3-203(e), exempting the donation of instruments from the formal (writing) requirements of the civil code. We thus conclude that the petition states a cause of action when it alleges that Mrs. Bohrisch instructed Ms. Rutledge to cash the certificate of deposit because, she, Mrs. Bohrisch, wanted Ms. Rutledge to have it.
For the above and foregoing reasons the judgment of the court below is reversed and the matter remanded for proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
NOTES
[1] This lady's name is spelled differently in the pleadings and briefs. We have adopted this spelling because this appears to be the way she signed her name to the power of attorney annexed to the petition and that is the way it is spelled in the power of attorney.
[2] (3) To make, do and transact all and every kind of business of what nature and kind so ever, including the receipt, recovery, collection, payment, compromise, settlement, and adjustment of all accounts, legacies, bequests, interests, dividends, annuities, demands, debts, taxes, and obligations, which may now or hereinafter be due, owing, or payable by me or to me:
[3] The Petition does not state that Ms. Borisch actually delivered the C.D. to Ms. Rutledge.
[4] Article 2996, as it read in 1984, stated in pertinent part:

* * *
"If it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express" [Emphasis added.]
[5] Article 2997 then read:

"Thus the power must be express and special for the following purposes:
To sell or buy."
* * *
[Emphasis added]
[6] At the time of Tedesco, supra, article 2440 provided:

"All sales of immovable property shall be made by authentic act or under private signature.
Except as provided in article 2775, every verbal sale of immovables shall be null...."