TERESA MAE BADEAUX FERNANDEZ
v.
DONALD F. HEBERT, ET AL.
No. 2006 CA 1558.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
WALTER ANTIN, JR., JACQUES F. BEZOU, Counsel for Plaintiffs/Appellants, Teresa Mae Badeaux Fernandez and Charles Raymond Fernandez.
RICHARD F. ZIMMERMAN, JR., Counsel for Defendants/Appellees, J. Alvin Badeaux, Jr., Anthony Carroll Badeaux, Mary Claire Badeaux Elmore, Manuel J. and Lorraine Landeche Rodrigue.
HENRY P. JULIEN, JR., WILLIAM W. EDELMAN, Counsel for Defendant/Appellee, Thomas Badeaux.
RICHARD G. DUPLANTIER, Counsel for Defendant/Appellee, Charles C. Theriot, CPA.
FREDERICK R. BOTT, Counsel for Defendants/Appellees, Camile A. Morvant, II and Morvant and Cavell.
WILLIAM E. WRIGHT, Jr., Counsel for Defendants/Appellees, Terry J. Bonvillian and Terry J. Bonvillian, APLC.
Before KUHN, GAIDRY, and WELCH, JJ.
KUHN, J.
Plaintiff-appellant, Charles Raymond Fernandez,[1] appeals the trial court's judgment, concluding that donations inter vivos made by defendant-appellee, Thomas L. Badeaux, on behalf of his aunt Viola Mary Tabor Badeaux (the decedent) to himself and to defendants, J. Alvin Badeaux, Anthony Badeaux, and Mary Claire Badeaux Elmore (collectively the Badeaux siblings), are valid. The trial court's judgment granted partial summary judgment and dismissed all Fernandez's claims against defendants, J. Alvin Badeaux, Anthony Badeaux, and Mary Claire Badeaux Elmore.[2] We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Fernandez is the residuary legatee named in the will executed by the decedent on July 2, 1991. Decedent died on June 21, 2003; she and her husband had no children. The will, which mirrored her late husband's 1991 will, left numerous particular legacies to, among others, her nephew, Thomas Badeaux, and his siblings, the children of J. Alvin Badeaux, who co-founded and worked at National Beverage Company, a wholesale malt beverage distributorship. Thomas Badeaux had worked alongside decedent's husband at the distributorship for approximately forty years and had become a part-owner by the time of decedent's death.
Commencing in 1993, decedent began to transfer the property that was the subject of mortis causa legacies in her will by donations inter vivos to those who had been named as particular legatees. Fernandez filed this lawsuit subsequent to decedent's death, challenging as null, among other things, two inter vivos donations executed by Thomas Badeaux on behalf of decedent prior to her death.[3] Fernandez alleged that Thomas Badeaux and defendant Camille Morvant had committed fraud or duress in making the donations. The residuary legatee sought a declaration that the donations are null and the return of the donations to Fernandez or payment of damages for their fair market value. From Camille Morvant, Fernandez claimed entitlement to an amount that would compensate the residuary legatee's damages.[4]
The first donation that Fernandez challenges is five shares of Balamor, Inc. stock,[5] transferred on December 22, 1996, from decedent to Thomas Badeaux and the Badeaux siblings. The act of donation, which transferred to each donee 1.25 shares of the Balamor, Inc. stock, was signed by Thomas Badeaux on behalf of the decedent, pursuant to a power of attorney purportedly executed in favor of Thomas Badeaux by the decedent on October 14, 1993. The second inter vivos donation Fernandez challenges is of fifty shares of National Beverage Company stock from decedent to Thomas Badeaux and the Badeaux siblings on July 20, 2000. In this second donation of 12.5 shares of stock to each donee, Thomas Badeaux appeared as the decedent's agent, ostensibly pursuant to the October 14, 1993 power of attorney.
Fernandez does not dispute that on October 14, 1993, the decedent executed a power of attorney in favor of Thomas Badeaux as her agent. But he alleges that the power of attorney, which was drafted, prepared, and notarized by Camille Morvant, an attorney with Morvant & Cavell, was subsequently altered to allow Thomas Badeaux to make donations and gifts.[6] Fernandez compares the acts of donation executed by two of the Badeaux siblings with their respective responses to interrogatories. The residuary legatee points out that none of these acts is in proper form because in an interrogatory response, one sibling states that he was not in the presence of the notary and the two witnesses who appear on the acts of donation and the other sibling states that she cannot recall whether she was present. Thus, because two versions of the power of attorney exist and two of the Badeaux siblings' responses to interrogatories call into question the veracity of the recitals on the acts of donation, Fernandez avers that the donations were made with fraud or duress so as to entitle him, as the residuary legatee, to a declaration of the nullity of the donations.[7]
On August 22, 2005, the Badeaux siblings filed a motion for summary judgment, averring that the donations of the five shares of Balamor, Inc. and the fifty shares of National Beverage Company stock were valid and seeking dismissal of Fernandez's claims. On January 31, 2006, Thomas Badeaux filed a similar motion for partial summary judgment on the same bases claimed by Fernandez in challenging the validity of the Balamor, Inc. and National Beverage Company stock. And on February 6, 2006, Camille Morvant and the law firm of Morvant & Cavell similarly moved for a partial summary judgment.
After a hearing on April 17, 2006, the trial court granted the motions, concluding that the two inter vivos donations of Balamor, Inc. and National Beverage Company stock to Thomas Badeaux and the Badeaux siblings were valid. The trial court's judgment stated that decedent had the requisite mental capacity to make each of the two inter vivos donations; the donations were made in proper form and the stock had been properly delivered; Thomas Badeaux had express oral authorization to make the donations on decedent's behalf; and decedent had the requisite donative intent to make the donations. All claims against the Badeaux siblings were dismissed. The judgment also expressly dismissed all claims regarding the two inter vivos donations. The trial court certified as final its judgment,[8] and this appeal by Fernandez followed.
Fernandez urges that the trial court's summary judgment was inappropriate. The residuary legatee suggests that both factual and legal issues preclude summary judgment. Fernandez contends that the issue of whether decedent had capacity is factually um-esolved. The residuary legatee also suggests that, as both a matter of law and fact, defendants failed to establish Thomas Badeaux had the authority to make the donations to either the Badeaux siblings or himself. And Fernandez asserts that whether decedent had a donative intent is another factually unresolved issue which does not permit summary judgment at this juncture of litigation.

SUMMARY JUDGMENT
On appeal, summary judgments are reviewed de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Brumfield v. Gafford, 99-1712, p. 3 (La. App. 1st Cir. 9/22/00), 768 So.2d 223, 225. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Id.
A motion for summary judgment is a procedural device used to avoid a fullscale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Id., 99-1712 at pp. 3-4, 768 So.2d at 225.
The burden of proof is on the movant. But if the movant will not bear the burden of proof at the trial of the matter, the movant is not required to negate all essential elements of the adverse party's claim, but rather to point out an absence of factual support for one or more essential elements. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and summary judgment is properly granted. La. C.C.P. art. 966C.
In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Suire v. Lafayette City-Parish Consol. Gov't, 04-1459, p. 11 (La. 4/12/05), 907 So.2d 37, 48. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Anglin v. Anglin, 05-1233, p. 5 (La. App. 1st Cir. 6/9/06), 938 So.2d 766, 769. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. Id.

CAPACITY
Fernandez initially contends that summary judgment is precluded because outstanding issues of material fact exist on the issue of whether the decedent had the capacity to make the inter vivos donations on December 22, 1996 and July 20, 2000.
Capacity to donate inter vivos must exist at the time the donor makes the donation. La. C.C. art. 1471. To have capacity to make a donation inter vivos, a person must be able to comprehend generally the nature and consequences of the disposition that he is making. La. C.C. art. 1477. A person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation inter vivos. La. C.C. art. 1482A. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. In re Succession of Crawford, 04-0977, p. 8 (La. App. 1st Cir. 9/23/05), 923 So.2d 642, 647, writ denied, 05-2407 (La. 4/17/06), 926 So.2d 511.
In support of their motion for summary judgment, the defendants offered deposition testimony and affidavits of the decedent's family members, sitters, and physician, which collectively establish that despite frailness in health and limited vision and hearing, the decedent remained mentally alert and capable of comprehending her affairs until a week or two before her death, when she was in the care of hospice. The affidavit of decedent's physician, Dr. T. Gregory Chaisson, a specialist in internal medicine, established that he had examined her on various occasions from October 1997 through May 12, 2003. Noting her difficulties with vision and hearing, Dr. Chaisson nonetheless attested that decedent "could both see and hear." According to her physician, there was no record or indication that the decedent was mentally incompetent on or near July 20, 2000, when the inter vivos donation of the National Beverage Company stock was made. Dr. Chaisson indicated that nothing in the medical records suggested that the decedent had at any time been mentally incompetent, unable to think, demented, or treated by mental health professionals. He attested, "For her age, [the decedent] was mentally sharper than most. She was able to formulate her thoughts clearly and articulate them to me. She also was able to understand clearly when I would talk with her. In my opinion, [the decedent's] thought processes were clear." Every witness who testified by deposition or affidavit about her capacity expressed an appreciation of the decedent as mentally "sharp" and aware. Clearly, the record supports a showing by the defendants that the decedent had the requisite mental capacity on December 22, 1996 and on July 20, 2000, when the inter vivos donations of Balamor, Inc. and National Beverage Company stock were made on her behalf by Thomas Badeaux.
In his production of factual support sufficient to establish that he will be able to satisfy his burden of proof at trial, Fernandez relied on excerpts from Thomas Badeaux's May 14, 2004 deposition testimony. In that testimony, Thomas Badeaux acknowledged that the decedent was advanced in age, of limited vision, hard of hearing, and in declining health. He also testified that the decedent "had virtually no knowledge of the world of business and finance and transactions and so forth." This, Fernandez maintains, is sufficient to create a genuine issue of material fact on the decedent's capacity.
Despite Thomas Badeaux's description of decedent's health issues, a review of the entirety of his deposition reveals that he repeatedly testified that the decedent was mentally "sharp." Absent evidence that decedent's health issues actually interfered with her mental faculties or that she demonstrated conduct of a person with less than full faculties, the limited testimony of Thomas Badeaux relied upon by Fernandez standing alone does not support a finding that she lacked the necessary capacity to make the inter vivos donations to Thomas Badeaux and the Badeaux siblings on either December 22, 1996 or July 20, 2000. Likewise, the entirety of Thomas Badeaux's deposition shows that while the decedent was not financially astute, she was capable of deciding the disposition of her property after her death. Fernandez's showing is woefully short of that required to create an issue of fact about the decedent's capacity at the time of the inter vivos donations. Accordingly, no material facts exist, which preclude summary judgment on the basis that the decedent lacked capacity.

MANDATE'S AUTHORITY
Fernandez next maintains that the trial court erred as a matter of law in concluding that Thomas Badeaux was authorized by the decedent to make the donations to himself and his siblings. On appeal the residuary legatee concedes the applicability of the Louisiana Stock Transfer Law, see La. R.S. 10:X-XXX-XXX, and that delivery of the stock certificates is sufficient to consummate a transfer in ownership. Fernandez urges, however, that Thomas Badeaux required decedent's written authority to enable him to make inter vivos donations. Without that written authority, the residuary legatee maintains the donations of Balamor, Inc. and National Beverage Company stock are null.
In an effort to avoid delay arising from disputed facts about the execution of two powers of attorney, the defendants have conceded for purposes of disposition of summary judgment that no written authority was given to Thomas Badeaux to make the donations. They urge that Thomas Badeaux did not require written authority.
According to La. C.C. art. 2989, "[a] mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La. C.C. art. 2993 states:
The contract of mandate is not required to be in any particular form.
Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form.
La. C.C. art. 2996 provides that "[t]he authority to alienate, acquire, encumber, or lease a thing must be given expressly. Neither the property nor its location need be specifically described." La. C.C. art. 2997 further elaborates:
Authority also must be given expressly to:
(1) Make an inter vivos donation, either outright or to a new or existing trust or other custodial arrangement, and, when also expressly so provided, to impose such conditions on the donation, including, without limitation, the power to revoke, that are not contrary to the other express terms of the mandate.
Fernandez urges that in order to validly make the inter vivos donations of the Balamor, Inc. and National Beverage Company stock, under Articles 2996 and 2997 Thomas Badeaux was required to act pursuant to written authority from the decedent. Pointing to Rutledge v. Hibernia Corp., 00-0674 (La. App. 4th Cir. 1/16/02), 808 So.2d 765, Fernandez contends that the Supreme Court considers the word "express" to mean "written" authority in Articles 2996 and 2997.
In Rutledge, the fourth circuit examined whether a petition for damages for alleged acts of negligence and breach of contract stated a cause of action. There, Rutledge had averred that as caretaker of the decedent, she had been given an unlimited power of attorney authorizing her to perform all acts for the decedent that she would be legally able to perform for herself. Rutledge subsequently assisted the decedent in making two donations to family members. While at the bank acquiring funds for one of the donations, the decedent instructed Rutledge to cash a certificate of deposit and expressed her intent to donate the cashed funds to Rutledge. It was alleged that Rutledge properly completed the paperwork; a bank employee informed her that the paperwork would be sent to a New Orleans office for processing; and the bank employees were aware that Rutledge had a power of attorney from the decedent. After the decedent died, Rutledge returned to the bank to inquire about the delay in delivery of the certificate of deposit. She was advised an error had occurred and that the bank had failed to process the paperwork properly. Thus, the certificate of deposit was still in the decedent's name upon her death and believed to have been paid or delivered to the decedent's succession.
Noting that under the commercial laws,[9] an instrument is transferred by delivery to someone other than its issuer for the purpose of giving the recipient the right to enforce the instrument and concluding that the power of attorney that Rutledge relied upon did not expressly authorize her to make donations, the court considered whether the allegations of the principal's verbal authority were sufficient to authorize her to make the donation to herself on behalf of the decedent. Pointing to La. C.C. art. 2998, which states "A mandatary who represents the principal as the other contracting party may not contract with himself unless he is authorized by the principal, or, in making such contract, he is merely fulfilling a duty to the principal," the Rutledge court applied that article to the allegations of the petition and held that no written authorization by the principal was required for a mandatary to self deal. 00-0674 at p. 11, 808 So.2d at 771. Thus, the Rutledge court concluded the petition stated a cause of action.
Although not required for disposition of the case, which dealt with a mandatary making a donation to herself on behalf of her principal  a situation wholly addressed by Article 2998  the Rutledge court looked to Tedesco v. Gentry Dev., Inc., 540 So.2d 960 (La. 1989), and concluded that by holding "in the sale of immovable property written authority is required for an agreement to sell or a contract of sale," it was "at once apparent that the Supreme Court considered the word `express' to mean `written' authority."
In Tedesco, the court stated, "In the sale of immovable property, written authority is required for an agent to execute either an agreement to sell or a contract of sale," and relied upon an in part inateria reading of former articles La. C.C. art. 2996 (stating in pertinent part "[i]f it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express...."), art. 2997 (providing "[t]hus, the power must be express and special ... [t]o sell or buy"), and art. 2440 (stating "[a]ll sales of immovable property shall be made by authentic act or under private signature," and that in general, "every verbal sale of immovables shall be null....") to reach its conclusion.
But the facts in the case sub judice is not as those in Tedesco, which involved an attempted transfer of immovable property and the apparent authority of an agent to bind his principal to a contract of sale.[10] Thus, the dicta in Rutledge, suggesting that the mandatary's express authority under Articles 2996 and 2997 must be written, does not resolve the issue raised in this case. Rather, it is the provisions of Article 2993, which state that the contract of mandate is not required to be in any particular form but that nevertheless, when the law prescribes a certain form for an act, the mandate authorizing the act must be in that form, which are instructive. See also 7 Glenn G. Morris & Wendell H. Holmes, Louisiana Civil Law Treatise Business Organizations § 21.04 (1999) (noting that a principal's manifestations of authority need not be made in any particular form in order to bind him under actual or apparent authority).
Applying Articles 2993, 2996, 2997, and the Louisiana Stock Transfer Law to the facts as established by the evidence submitted at the hearing on the motion for summary judgment, there is no legal error in the trial court's conclusion that the express authority granted to Thomas Badeaux by the decedent to make inter vivos donations of the Balamor, Inc. and National Beverage Company stock to his siblings need not have been in writing. And concluding, as the Rutledge court did, that written authority was not needed for Thomas Badeaux to transfer to himself 1.25 shares of Balamor, Inc. and 12.5 shares of National Beverage Company stock, there is no legal error in the trial court's conclusion that these donations were valid despite a lack of written authorization. Thus, despite Fernandez's strenuous arguments challenging the validity of the acts of donation based on the existence of two powers of attorney and the responses of two Badeaux siblings to interrogatories, because no written authority was required to make the inter vivos donations of the Balamor, Inc. and National Beverage Company stock, the circumstances surrounding the execution of each are not material issues of fact sufficient to preclude summary judgment.
We now address Fernandez's contention that, on the showing made, outstanding issues of material fact preclude summary judgment because the evidence of Thomas Badeaux's verbal authority to make the stock donations is contradictory, thereby requiring the trier of fact to resolve the conflict. In support of their assertion that Thomas Badeaux had verbal authority to make the donations, defendants point to his July 7, 2005 affidavit. Fernandez suggests a conflict exists between the statements attested to by Thomas Badeaux in July 2005 and his May 14, 2004 deposition testimony.
We find no conflict between the affidavit and the deposition testimony. Insofar as the Balamor, Inc. stock, nothing in the deposition testimony relied upon by Fernandez purports to address Thomas Badeaux's authority to make that donation on behalf of decedent. And while Thomas Badeaux testified on May 14, 2004 that he did not remember whether he asked the decedent what she wanted to do with the National Beverage Company stock, by July 7, 2005, his memory was clear that the decedent had "verbally directed" him to make the donation and that she made the donation "intentionally and expressed an understanding that she would be giving up ownership of those shares of stock" to Thomas Badeaux and the Badeaux siblings. Additionally, Thomas Badeaux's comments that the decedent was unavailable to sign the donations for herself because of medical or other health-related reasons do not imply an inability of the decedent to have verbally directed the donations. Physical unavailability is not necessarily tantamount to verbal incapacity; Fernandez has provided nothing further to suggest that the decedent could not have spoken with her nephew on July 20, 2000 prior to making the donation. Thus, we do not find that contradictory evidence creates a genuine issue of material fact insofar as whether Thomas Badeaux had verbal authority from the decedents to make the donations.
Having failed to offer any evidence to contradict the showing made by the defendants  that the decedent verbally directed Thomas Badeaux to make the inter vivos donations of Balamor, Inc. and National Beverage Company stock and that she made the donations intentionally and with the understanding that she was giving up ownership in the stock  the trial court correctly concluded there were no outstanding issues of material fact that precluded summary judgment on the issue of whether the donation was valid in form.

DONATIVE INTENT
Although Fernandez concedes the applicability of the Louisiana Stock Transfer Act to the inter vivos donations made by Thomas Badeaux as mandatary for the decedent on December 22, 1996 and July 20, 2000, and that the stock certificates were actually delivered as required by law, he urges that disputed material facts preclude summary judgment on the issue of whether the decedent had the requisite donative intent to give the Balamor, Inc. and National Beverage Company stock to Thomas Badeaux and the Badeaux siblings.
Although a donation may be valid as to form, the substantive requirements of a divestment and donative intent must be fulfilled in order to effect a valid donation. Fogg v. Fogg, 571 So.2d 838, 841-42 (La. App. 3d Cir. 1990), writ denied, 575 So.2d 372 (La. 1991). The donee bears the burden of proving the validity of alleged donations. The proof must be "strong and convincing" that the donor intended to give the property. Fogg, 571 So.2d at 842.
In support of their requisite showing of donative intent, the defendants offer the decedent's will and note the pattern of inter vivos donations of mortis causa legacies set forth in the will that commenced in 1993 when the decedent personally signed the acts of donation. The defendants point out that the inter vivos donations of the Balamor, Inc. and National Beverage Company stock by the decedent's mandatary on behalf of the decedent in conformity with her mortis causa legacies simply is a continuation of the established pattern.
The defendants also urge that the deposition testimony of Badeaux sibling, J. Alvin Badeaux, Jr., supports a finding of donative intent. He testified that after the donations were made, he thanked the decedent and that of her deceased husband for their kindness and generosity. He stated that the decedent replied by telling him that he was welcome and that was what her deceased husband wanted.
Additionally, insofar as the donation of the National Beverage Company stock, the defendants submitted into evidence a copy of gift tax return to the IRS submitted in 2000. That return, signed by the decedent personally, reflects the donation of National Beverage Company stock made by Thomas Badeaux as mandatary for the decedent.
The trial court also considered as further support of decedent's donative intent that the purpose of the inter vivos donations was estate planning, as established through by the deposition testimony of Charles Theriot, with whom Thomas Badeaux had consulted. According to Theriot, because decedent owned more than what her day-to-day needs required, the reason the inter vivos donations were made to those who were going to inherit under decedent's will anyway was to reduce the size of her estate prior to her death and, therefore, the amount of estate taxes that would have to be paid.
Based on this showing, the defendants demonstrated factual support sufficient to sustain their burden of proof at the trial. Thus, to create a genuine issue of material fact, the onus was on Fernandez to produce evidence that the decedent did not have an intent to donate the Balamor, Inc. and National Beverage Company stock inter vivos to Thomas Badeaux and the Badeaux siblings. This he failed to do. And while Fernandez questions whether the decedent knew what she was doing when she signed the 2000 gift tax return for the inter vivos donation of the National Beverage Company stock to Thomas Badeaux and the Badeaux siblings, he offered no evidence that would support a finding that decedent was not aware of her actions when she signed the gift tax return.
Mindful that the voluminous record is devoid of a single item of evidence suggesting the inter vivos donations were not in conformity with decedent's will, there is no genuine issue of material fact insofar as donative intent, and the defendants are entitled to summary judgment.
Defendants have pointed out an absence of factual support for the essential elements of Fernandez's claim, i.e., that decedent lacked capacity at the time of the inter vivos donations; Thomas Badeaux lacked authority to make the donations; and the decedent did not have an intent to donate the Balamor, Inc. and National Beverage Company stock to Thomas Badeaux and the Badeaux siblings. Thereafter, Fernandez failed to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Thus, there are no genuine issues of material fact which preclude summary judgment, see La. C.C.P. art. 966C(2), and the trial court correctly granted defendants' motions.

DECREE
For these reasons, the trial court's judgment, concluding that the inter vivos donations of Balamor Inc. and National Beverage Company stock by Viola Mary Tabor Badeaux by her mandatary Thomas Badeaux to himself and the Badeaux siblings are valid, granting partial summary judgment, and dismissing all Fernandez's claims against defendants, J. Alvin Badeaux, Anthony Badeaux, and Mary Claire Badeaux Elmore, is affirmed. Appeal costs are assessed against plaintiff-appellant, Charles Raymond Fernandez.
AFFIRMED.
NOTES
[1] Although this lawsuit was instituted by Teresa Mae Badeaux Fernandez, after her death Charles Raymond Fernandez, the testamentary executor of her succession, was substituted as plaintiff.
[2] The judgment also dismisses Fernandez's claims against defendants, Manuel and Lorraine Rodrigue, based on the conclusion that two inter vivos donations Thomas Badeaux made on behalf of the decedent, transferring 626 shares of Edward Badeaux Company stock, were valid. In Fernandez v. Hebert, XXXX-XXXX (La. App. 1st Cir. ___/___/___) (an unpublished opinion) also rendered this day, we affirmed the trial court's dismissal of all of Fernandez's claims against the Rodrigues, determining the Rodrigues established that any declaration of the nullity of those transactions would result in restoration of the stock to the decedent's patrimony, under the decedent's will the stock would then be distributed to the Rodrigues, and that there were no outstanding issues of material fact on any damages Fernandez had suffered as a result of the transfer of the stock inter vivos rather than mortis causa that precluded summary judgment in favor of the Rodrigues. Because all claims against the Rodrigues have been dismissed, no practical relief can be given by our review of the propriety of the trial court's determination in this appeal of the validity of the donations to them, and the matter is moot. See Robin v. Concerned Citizens, St Bernard, Inc., 384 So.2d 405 (La. 1980). Accordingly, we pretermit an appellate review of Fernandez's challenge against the Rodrigues in this appeal.
[3] A judgment of partial possession in the decedent's succession rendered on June 18, 2004, placed into the residuary legatee's possession all claims and causes of action that the decedent may have had in connection with or arising out of, among other things, the inter vivos donations made by Thomas Badeaux pursuant to any power of attorney. See La. C.C.P. arts. 685 & 3372. Thus, Fernandez asserts these claims in his capacity as the residuary legatee as well as on behalf of the decedent.
[4] The trial court's judgment, finding valid three additional donations to Thomas Badeaux and the Badeaux siblings executed by decedent personally, has not been appealed.
[5] Balamor, Inc. was a company related to National Beverage Company set up to own real estate; both companies had the same owners.
[6] Admitted into evidence were two versions of a power of attorney, both dated October 14, 1993, and nearly identical in language. Both stated that the decedent appointed Thomas Badeaux as "Agent" and granted "full power and authority for him ... to conduct, manage and transact all ... affairs, business, concerns and matters of whatever nature or kind, without any exception or reservations whatsoever," but one version added, "including but not limited to donations, gifts of any kind and/or character said agent in his sole discretion deems necessary to make."
[7] See La. C.C. art. 1478.
[8] Having reviewed the trial court's certification of the judgment as final, we find no error in the designation. See Motorola, Inc. v. Associated Indem. Corp., 02-1351, pp. 16-17 (La. App. 1st Cir. 10/22/03), 867 So.2d 723, 732-33.
[9] See La. R.S. 10-3-203(a).
[10] For this reason, Succession of Aucoin, 99-2171 (La. App. 1st Cir. 11/8/00), 771 So.2d 286 and In re Succession of Jackson, 00-31 (La. App. 3d Cir. 7/26/00), 770 So.2d 804, writ denied, 00-2482 (La. 11/17/00), 774 So.2d 974, upon which Fernandez relies, are inapposite.